OPINION
At approximately 3:00 a.m. on October 17, 1999, defendant-appellant, Frederick Hall, drove his Honda Accord up to the corner of Fourteenth and Republic Streets in the city of Cincinnati and asked Johann Hart and Kevin Davis if they had any crack cocaine for sale. An argument ensued between Hart and Hall, and Hall fired a handgun at Hart and Davis.
Hart was struck in the neck with the first shot, and Davis was struck in the arm with the second. After both men fell to the ground, Hall fired a third time, striking Hart in the lower back. Hall drove off, leaving Hart and Davis bleeding on the sidewalk.
Davis was able to get up and run to Vine Street, where he located two off-duty police officers. When the officers responded to the scene, they obtained from witnesses a license number for Hall's car and put out a broadcast describing the license number, the vehicle, and the driver.
After hearing the broadcast, another police officer spotted Hall's car. When Hall saw the officer, he sped away. The officer was unable to keep up with Hall and lost track of him, but because police had Hall's license number, they were able to obtain Hall's address and went to his home. Hall was not there, but, as the police were leaving the residence, they noticed that Hall's car was parked around the corner. The police officers then discovered Hall hiding behind a tree near his parked car. Hall was read hisMiranda rights and arrested.
Hall was transported to Cincinnati Police District One, where he was read his Miranda rights for a second time. Although Hall refused to sign a form acknowledging that his Miranda rights had been read to him, Hall gave up his right to remain silent, eventually offering to show police the location of the gun used in the shooting. Hall also denied that he was the shooter and offered conflicting versions of the events that had taken place that evening.
Despite Hall's claim that he had picked up a passenger who had been the one to shoot Hart and Davis, both Hart and Davis later identified Hall as their assailant and testified at trial that Hall was alone in his car at the time they were shot by him.
On October 22, 1998, Hall was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(1), two counts of felonious assault in violation of R.C. 2903.11(A)(2), two counts of attempted murder in violation of R.C. 2923.02(A), and one count of failure to comply in violation of R.C. 2921.33. The felonious-assault and attempted-murder counts each included three gun specifications. While Hall was in the Hamilton County Justice Center awaiting trial, and while Davis was also in the Justice Center on a possession charge, Hall approached Davis and offered money to him if he would forgo testifying at Hall's trial.
On May 10, 1999, Hall's first trial ended in a mistrial because the jury could not reach a verdict. Hall was retried during August 1999, and the jury returned guilty verdicts on all counts and specifications except the count charging Hall with the attempted murder of Kevin Davis. The trial court merged counts one and two, and also counts three and four, because the court concluded that these offenses, for different statutory versions of felonious assault, were allied offenses of similar import. The trial court then imposed the following periods of confinement: (1) for felonious assault, on each of counts one and three, seven years plus an additional five years for the merged gun specifications; (2) for attempted murder, count six, nine years plus an additional five years for the merged gun specifications; and (3) for failure to comply, count seven, seventeen months. All periods of confinement were ordered to be served consecutively, resulting in a total period of confinement of thirty-four years and five months.
On appeal, Hall presents eight assignments of error. We begin with the first, in which Hall claims that the trial court erred when it denied his motion for a new trial. On August 20, 1999, Hall filed the motion for a new trial based upon both prosecutorial misconduct and newly discovered evidence. Hall claimed in his motion that one of the state's witnesses, Officer Bailey, after first appearing at a suppression hearing, had twice changed his testimony identifying Hall as the driver of the Honda Accord: the alterations arose at Hall's first trial and then again during the second trial. Hall also claimed that the police had failed to reveal the contents of exculpatory, Brady material from two nontestifying witnesses, and that the police had failed to produce, pursuant to subpoena, certain radio-transmission and mobile-data-terminal-transmission logs. Hall further claimed that a key witness had been located and that her testimony, which amounted to newly discovered evidence, would have resulted in a different verdict.
Absent an abuse of discretion, this court will not ordinarily reverse a trial court's decision to deny a Crim.R 33 motion for a new trial. See State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, paragraph one of the syllabus; State v. Doan (Sept. 29, 1995), Hamilton App. No. C-940330, unreported. But the considerations bearing upon the exercise of the trial court's discretion differ with respect to the issues raised in this case. When a new trial is requested on the grounds of prosecutorial misconduct resulting from the suppression of material evidence favorable to the defendant, this court conducts a due-process analysis to determine whether the defendant was deprived of his right to a fair trial. See State v. Johnston (1988), 39 Ohio St.3d 48,529 N.E.2d 898, paragraph four of the syllabus. When a motion for a new trial is based upon newly discovered evidence, the issue is instead whether "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro (1947), 148 Ohio St. 505,76 N.E.2d 370, syllabus; State v. Larkin (1996), 111 Ohio App.3d 516,676 N.E.2d 906.
In reviewing this record, we hold that the trial court did not abuse its discretion in denying Hall's motion for a new trial. The conflicting testimony by the police officer regarding Hall's description was brought out during cross-examination. The jury had the opportunity to observe the witness and to assess his credibility regarding the identification of Hall as the driver of the Honda Accord. We hold that the officer's testimony, as a witness for the state, did not involve prosecutorial misconduct.
Hall contends that the police and prosecution failed to turn over exculpatory statements material to his innocence. In support of his motion, Hall attached the affidavit of Lolita Moore. In the affidavit, Moore stated that there were three persons in the Honda Accord, which would have supported Hall's theory of the case. Additionally, Hall claims that Moore and another witness, James Martin, gave written statements to the police that should have been turned over to Hall because they were exculpatory. Hall also claims, correctly, that Moore and Martin were subpoenaed by both the state and the defense, and that neither witness appeared at trial. It was only after the second trial and prior to sentencing that Moore was located by Hall's counsel.
Based upon Moore's affidavit, we hold that her testimony would not have been exculpatory, but would have been cumulative evidence regarding the conflicting identification of the number of persons inside the Honda Accord and the identification of Hall as the driver of that vehicle. Moore was listed as a witness by the state, was subpoenaed by both parties, but was not called to testify by either party. Since Hall failed to call Moore as a witness, to seek a continuance, or to proffer Moore's expected testimony, Hall cannot claim that the discovery of this witness provided the basis for a new trial. See State v. Sheppard (1955),100 Ohio App. 399, 128 N.E.2d 504.
The record also discloses that, contrary to Hall's assertions in his motion, all of the computer records and mobile-data-terminal-transmission logs were introduced at trial. In support of this basis for a new trial, Hall attached to his motion what purported to be a computer record that had not been previously turned over by the state; however, this document was entered into evidence as state's exhibit seventeen during the testimony of Police Specialist Patrick Harvey when he was called by the state as a rebuttal witness. Hall was given the opportunity to cross-examine Harvey regarding the contents of that document. Although the document should have been turned over prior to trial, Specialist Harvey explained during his testimony that its presence was not discovered when the police responded to Hall's subpoena. Despite this apparent discovery violation, we hold that the failure of the police department to turn over prior to trial the printout attached to Hall's new-trial motion, which was also admitted as state's exhibit 17, was harmless and did not deprive Hall of a fair trial. The printout did not contain any exculpatory evidence, nor would it have assisted Hall in his defense.
As part of the first assignment of error, Hall also claims that the trial court erred in failing to conduct a hearing on his new-trial motion. To begin with, there is no requirement that the trial court conduct a hearing and receive testimony prior to denying a motion for a new trial. See Toledo v. Stuart (1983),11 Ohio App.3d 292, 464 N.E.2d 474. Furthermore, the record indicates that the court asked Hall's counsel if they had anything further to present in support of the motion. Counsel stated that the motion was fully supported in writing and that it would be submitted to the court without further evidence or argument.
We hold in sum that the trial court did not abuse its discretion in denying Hall's motion. The first assignment of error is overruled.
In Hall's second and third assignments of error, he claims that his convictions were based upon insufficient evidence and were contrary to the manifest weight of the evidence. When the record contains substantial evidence to support all of the elements of each of the charged offenses, and that evidence is sufficiently probative of guilt, this court will not reverse on either the sufficiency or the weight of the evidence. See State v. Barnes
(1987), 25 Ohio St.3d 203, 495 N.E.2d 922; State v. Thompkins
(1997), 78 Ohio St.3d 380, 678 N.E.2d 541. We, therefore, review the record to determine if the state presented evidence to support a conviction on each offense, and we weigh that evidence and the reasonable inferences drawn from it, consider the credibility of the witnesses, and determine whether the jury lost its way in finding Hall guilty. See Thompkins, supra; State v. Martin
(1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
We hold that there was sufficient evidence presented by the state from which a factfinder could have found Hall guilty of each offense. Despite the sufficiency of the evidence to prove all the offenses, the jury found that the weight of the evidence supported Hall's guilt on only six out of the seven charges. Although there was some conflicting evidence regarding the identity of Hall as the driver of the vehicle, the jury was free to assess the credibility of the witnesses presented by the state and by Hall, and to resolve the conflicts in a reasonable manner. SeeThompkins, supra. We hold that the jury properly fulfilled that role in this case in arriving at its verdicts on each of the charges against Hall. Therefore, we overrule the second and third assignments of error.
In Hall's fourth assignment of error, he contends that the trial court erred in allowing the state to elicit testimony from Hall regarding convictions dating back more than ten years. Although the trial transcript originally reflected that the state asked Hall if he had been convicted of any felonies within the past twenty years, the transcript was subsequently corrected to indicate that the question actually asked by the state sought to elicit from Hall whether he had been convicted of any felonies within the past ten years. Based upon the correction of the record and the certification by the court reporter that the transcription software erroneously typed out "20" instead of "10" years, we hold that this assignment of error is without merit.
In Hall's fifth assignment of error, he claims that the trial court erred in allowing the state to present Police Specialist Harvey as a rebuttal witness. The scope of rebuttal testimony is left to the sound discretion of the trial court. See State v.Hymore (1967), 9 Ohio St.2d 122, 224 N.E.2d 126. Specialist Harvey's rebuttal testimony was presented in an effort to clarify the confusion regarding the identification testimony of another officer. Specialist Harvey was called because he had discovered another computer record, state's exhibit seventeen, that indicated that a police officer had been following Hall and not another car, which Hall had contended in his defense. Although state's exhibit seventeen should have been turned over in discovery, the failure to do so was adequately explained by Specialist Harvey during his testimony. Furthermore, we have already held that the failure of the state to produce this computer record prior to trial was harmless. Because we hold that the trial court did not abuse its discretion in allowing the state to call Specialist Harvey as a rebuttal witness, we overrule Hall's fifth assignment of error.
In Hall's sixth assignment of error, he claims that his due process rights were violated as a result of prosecutorial misconduct during closing argument. Hall claims that the state improperly commented upon his refusal to sign a waiver-of-rights form, which noted that he had been read his Miranda rights. Because Hall did not object to the state's comment at the time of trial, we may reverse only if we conclude that Hall would not have been convicted had the state not made such a comment. See Crim.R. 52(B); State v. Slagle (1992), 65 Ohio St.3d 597, 605 N.E.2d 916.
While the state highlighted Hall's refusal to sign the waiver-of-rights form during its closing argument, the jury heard evidence throughout the trial that Hall had been read his Miranda
rights on two occasions and that he had made a statement to the police. In fact, Hall himself testified that he had refused to sign the form, which he then attempted to use as a means to demonstrate that the statements he made to police were not voluntary. Because Hall attempted to use his failure to sign the form as a trial tactic, comment upon his failure to sign the form was not erroneous and did not rise to the level of prosecutorial misconduct. Therefore, we overrule Hall's sixth assignment of error.
In his seventh assignment of error, Hall claims that the trial court erred in failing to merge his attempted-murder conviction with the felonious-assault convictions for purposes of sentencing. Reviewing, as we must, the elements of attempted murder and felonious assault in the abstract, see State v. Rance (1999),85 Ohio St.3d 632, 710 N.E.2d 699, we conclude that the offenses were of dissimilar import and that they properly gave rise to separate convictions. Merging these convictions would have been erroneous. Therefore, we overrule Hall's seventh assignment of error.[1]
In Hall's eighth and final assignment of error, he claims that he was represented by ineffective counsel. Hall specifically cites the following instances where counsel's assistance was allegedly ineffective: counsel's submission of Hall's motion for a new trial without a hearing; and counsel's failure to object to the introduction of testimony concerning Hall's convictions that were more than ten years old, to the closing arguments made by the state, and to the trial court's failure to merge the felonious-assault and attempted-murder convictions.
We review this assignment of error under a two-step analysis. First, we must determine whether counsel made errors so egregious that Hall was essentially deprived of his guaranteed right to counsel. See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Carter (1995), 72 Ohio St.3d 545,651 N.E.2d 965. If this first prong is satisfied, we must then determine whether the deprivation of adequate counsel prejudiced the defense. See Strickland, supra.
All of the errors cited by Hall as ineffective assistance of counsel have been addressed earlier in this opinion. We have held that the trial court had no obligation to hold a hearing on the motion for a new trial. Counsel's failure to insist upon a hearing for the new-trial motion or to object during the state's closing argument may be considered sound trial strategy and not deficient performance. See Carter, supra. We have also held that the trial transcript was corrected to reflect that the state did not seek to elicit testimony from Hall regarding convictions greater than ten years old, and that the merger of the attempted-murder and felonious-assault convictions would have been erroneous. Consequently, we hold that counsel's performance was not deficient, overrule Hall's eighth assignment of error, and affirm the judgment of the trial court.
Doan, P.J., and Painter, J., concur.
[1] We note that the trial court merged into one offense the felonious-assault counts for each victim. Pursuant to Rance,supra, and our recent decision in State v. Coach (May 5, 2000), Hamilton App. No. C-990349, unreported, the (A)(1) and (A)(2) subsections of the felonious-assault statute do not define allied offenses of similar import. Although the trial court erred in merging these charges as allied offenses, this issue was not raised by the parties.