THE STATE OF OHIO, APPELLEE, *v.* BARNES, APPELLANT.

[Cite as State *v.* Barnes (1986), 25 Ohio St. 3d 203.]

(No. 85-596—Decided August 6, 1986.)

*Anthony G. Pizza,* prosecuting attorney, and *Curtis E. Posner,* for appellee.

*C. Allen McConnell,* for appellant.

*Per Curiam.* In this case, as in all death penalty appeals, this court is faced with a number of tasks. First, we must answer the specific issues raised by appellant regarding the proceedings below. Next, we must, pursuant to R.C. 2929.05, independently weigh the aggravating circumstances in this case against any factors which mitigate against the imposition of the death penalty. Finally, we must independently consider whether appellant's sentence is disproportionate to the penalty imposed in similar cases.

## I

Appellant first contends that he was denied Eighth and Fourteenth Amendment protections by the state's use of aggravating circumstances which duplicated both elements of the underlying crime, and each other, contrary to the United States Supreme Court's rulings in *Zant* v. *Stephens* (1983), 462 U.S. 862, and *Godfrey* v. *Georgia* (1980), 446 U.S. 420. Since the instant argument was neither raised before, nor ruled on by, the court of appeals, this court is not required to address it on the merits. *State* v. *Awan* (1986), 22 Ohio St. 3d 120. See, also, App. R. 12 and R.C. 2505.21. We have considered appellant's claims, however, and have found them to be without merit. The elements of the aggravating circumstances of aggravated burglary and aggravated robbery do not merely duplicate the elements of the underlying crime of aggravated murder. The function of an aggravating circumstance, as noted by the United States Supreme Court, in *Zant* v. *Stephens, supra,* at 877, is:

"* * * [To] genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."

R.C. 2929.04(A)(7), which sets forth the aggravated burglary and aggravated robbery aggravating circumstances, accomplishes that function

by allowing the death penalty to be imposed for those felony murders only when the defendant was the principal offender or when the murder was premeditated. Thus, both the robbery and burglary aggravating circumstances require an additional fact, independent of the elements of aggravated murder, be proven before an offender is eligible for capital punishment. The trial court had to find that appellant committed murder while committing or attempting to commit burglary and/or robbery and, further, that appellant was the principal offender or that the murder was premeditated. An accomplice could be convicted of aggravated murder but would not be subject to the death penalty. By such a limitation, the category of death-eligible aggravated murderers is narrowed in compliance with *Zant* and no constitutional violation arises.

Appellant's additional contention, that the aggravating circumstances of burglary and robbery are unnecessarily duplicative, is likewise without merit. Since only one aggravating circumstance is necessary for imposition of the death penalty, even if the burglary and robbery aggravating circumstances were merged, the trial court still could have properly imposed capital punishment. See *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164. More importantly, the facts of this case demonstrate that two separate offenses, aggravated burglary and aggravated robbery, were committed. The crime of aggravated burglary was complete when appellant trespassed into an occupied structure with the intent to commit a theft offense or felony, and threatened to inflict harm on another. See R.C. 2911.11. The distinct offense of aggravated robbery was complete when appellant, while committing a theft offense, inflicted serious physical harm on the victim, to the extent of killing him. See R.C. 2911.02 and *State* v. *Frazier* (1979), 58 Ohio St. 2d 253 [12 O.O.3d 263]. Therefore, the lower courts did not err by considering both aggravated robbery and aggravated burglary as aggravating circumstances.

Appellant further contends that the trial court abused its discretion by failing to grant his motion to suppress his statements to the police. Appellant contends that his statements were obtained in violation of *Miranda* v. *Arizona* (1966), 384 U.S. 436 [36 O.O.2d 237]. *Miranda* requires a police officer to give warnings whenever a suspect is under custodial interrogation. *Miranda* warnings are not required simply because questioning takes place at a police station and the questioned person is a suspect, especially, as in the case *sub judice*, when a suspect voluntarily submits to questioning and is at all times free to leave. See *California* v. *Beheler* (1983), 463 U.S. 1121, and *Oregon* v. *Mathiason* (1977), 429 U.S. 492.

In the case at bar, appellant's *Miranda* rights were complied with each time he was questioned by police. On May 30, 1983, Detective Poiry left his business card with the appellant's roommate, and requested that appellant contact him. Appellant returned the detective's call and went to the police station immediately thereafter. Appellant was not placed under arrest. After a thirty to forty-five minute conversation with the detective, ap-

pellant left the police station. Since appellant was not deprived of his freedom in any way, this was not a custodial interrogation and *Miranda* warnings were not required.

Appellant next spoke with Detective Marx on June 1, 1983 outside appellant's apartment. Appellant agreed to accompany the detective to the police station. At the police station, appellant was informed that he was a suspect in the killing at Jakey's Bar. Marx told appellant that he could not discuss the particulars of the case with appellant unless appellant read and signed the waiver of rights form. Appellant read his rights, signed the waiver and answered the detective's questions. After appellant made inculpatory statements to Marx, appellant was arrested. In this instance, appellant was informed of, and voluntarily waived, his *Miranda* rights.

Appellant again spoke with Poiry on June 2, 1983, one day after his arrest and one day after having read his rights and waiving them. Poiry had arrested another suspect, William Henry Taylor, whom appellant had identified as an accomplice. Appellant indicated his willingness to confront Taylor with his accusation of Taylor's alleged involvement in the crime. When Taylor indicated that he was not involved, appellant asked the detective to take him to the apartment of Eloise Lawson, stating that she would be able to corroborate his version of events. Although re-reading appellant's rights to him at this time would have been an extra precaution, it is not one mandated by the Ohio or United States Constitutions. It is clear from the instant record that at all times appellant was acting voluntarily and knowingly when he conversed with the police detectives. Appellant had received and waived his *Miranda* warnings less than twenty-four hours prior to the instant conversation as well as having been told on this occasion that his rights still applied. Appellant in no way indicated that he wished to remain silent or speak with an attorney. Statements made to police under such circumstances cannot be said to violate any constitutional rights. See *Edwards* v. *Arizona* (1981), 451 U.S. 477 (no subsequent interrogation may be initiated by police *after* the suspect has invoked a right to counsel) and *United States* v. *Rice* (C.A.5, 1981), 652 F. 2d 521, 527 (suspect's exercise of right to remain silent does not render statements made *before* the privilege was invoked involuntary). Thus, the trial court properly denied appellant's motion to suppress such statements.

Appellant next urges that the trial court committed reversible error by failing to grant his motion to suppress certain physical evidence. It is undisputed that a person waives his Fourth Amendment protection by consenting to a warrantless search. *Davis* v. *United States* (1946), 328 U.S. 582, *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, *State* v. *Pi Kappa Alpha Fraternity* (1986), 23 Ohio St. 3d 141. The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver.

Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent. *Schneckloth, supra; United States* v. *Mendenhall* (1980), 446 U.S. 544.

Three separate searches were conducted in this case. The first search occurred at the apartment of Eloise Lawson and the second at the apartment of Anita Thomas. Appellant's apartment was also searched. Testimony revealed that appellant voluntarily signed a waiver of search warrant form consenting to a police search of his apartment. Appellant was informed that he was not required to allow the search. Both Lawson and Thomas also executed waiver of search warrant forms. The record reflects that Thomas signed the waiver after she and a detective retrieved a plastic garbage bag from a back bedroom, but apparently before the bag was opened and inventoried by police. After the waiver was signed, the police opened the bag and discovered appellant's bloodstained clothing, a hammer and a knife. Thomas never objected to the presence of the police in her apartment, nor did she object to retrieving the bag. In fact, Thomas let the officers into her apartment and retrieved the bag at the express request and direction of appellant. Since the police obtained the voluntary consent of all the parties involved to search the apartments in question, the trial court properly denied appellant's motion to suppress the fruits of those searches.

The next issue before this court is whether the state upheld its burden of proving every element of the charged offense beyond a reasonable doubt. Ohio law mandates that:

In a criminal case a verdict can not be said as a matter of law to be manifestly against the weight or sufficiency of the evidence, where substantial evidence is offered by the state in support of all of the elements of the offenses charged, and if such evidence was of sufficient probative value to sustain a conviction, the reviewing court will not reverse on the sufficiency or weight of evidence. See *State* v. *Shively* (1961), 172 Ohio St. 128 [15 O.O.2d 211]; *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]; and *State* v. *Black* (1978), 54 Ohio St. 2d 304, 308 [8 O.O.3d 296].

In the instant case, there was testimony to the effect that appellant stated: that he and an accomplice told the victim that they needed to use the telephone in the bar; that after gaining entry by deception, appellant gave his accomplice a knife; that appellant's accomplice used that knife to stab the victim after the victim refused to cooperate with demands for money; and that appellant went to the cash register and took money, and then beat the victim with a pool cue. There was expert testimony to the effect that the force of such blows was sufficient to have killed the deceased. Appellant's statements, along with the physical evidence, provide substantial evidence on every element of the crime, including intent to kill. Thus, pursuant to *Shively, DeHass* and *Black, supra,* this court will not disturb the trial court's guilty verdict.

Appellant finally maintains that the trial court improperly withheld

from him grand jury transcripts. Appellant requested certain grand jury transcripts from cases where the death penalty could have been imposed for the purpose of aiding the court of appeals in its proportionality review. The general rule concerning access to grand jury transcripts was set forth by this court in *State* v. *Laskey* (1970), 21 Ohio St. 2d 187 [50 O.O.2d 432]. The *Laskey* court stated at 191 that grand jury secrecy is to be maintained unless the defense demonstrates that a particularized need for the transcript outweighs the need for secrecy. This court addressed the precise question raised by appellant in *State* v. *Rogers* (1985), 17 Ohio St. 3d 174. In *Rogers,* we noted at 184:

"* * * Such transcripts present only the prosecutor's evidence for the purpose of determining whether a suspect should be indicted. They do not show even whether the accused was guilty, much less identify his penalty. The grand jury transcripts, therefore, could not have aided in the court's proportionality review. Accordingly, there was no particularized need for disclosure in this case and appellant's argument has no merit."

Similarly, in the instant case, appellant has failed to persuasively demonstrate a particularized need for the requested grand jury transcripts which would outweigh the necessity to maintain the secrecy of such proceedings. Thus, the trial court properly denied appellant access to such transcripts.

## II

We must now undertake the task of independently weighing the aggravating circumstances surrounding the murder of Donald Mandry against the factors appellant has presented which mitigate against imposition of the death penalty. R.C. 2929.05(A) mandates this weighing process and states in pertinent part:

"* * * [T]he supreme court shall * * * review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case * * *."

R.C. 2929.05(A) provides further:

"* * * [T]he supreme court shall affirm a sentence of death only if the * * * court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case * * *."

R.C. 2929.04(B) sets forth seven factors to be considered in mitigation of the death penalty:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to ap-

preciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

The state has proven the existence of two aggravating circumstances in this case: aggravated robbery and aggravated burglary. These must be balanced against the seven above-mentioned possible mitigating factors. As to the first and second factors, there is absolutely no evidence that the victim induced or facilitated the killing or that appellant was under duress, coercion, or strong provocation. To aid in analyzing factor three, various psychiatric reports were prepared in connection with this case. The appellate court stated the reports concluded that appellant suffered from no gross psychopathology. Dr. William A. Seaman, Ph.D., a clinical psychologist, interviewed appellant and stated that despite the fact that he was under the influence of alcohol and illegal drugs, appellant knew what he was doing. The fourth factor, appellant's youth, is not persuasive in mitigation as appellant was twenty-eight years old at the time of the murder. Similarly, factor five is not necessarily to be given a great deal of weight. While defendant's criminal record prior to his murder conviction was not extensive (one multiple felony indictment and several misdemeanors), it is significant. Factor six presents a question of fact. While appellant told the police that another person was involved in this offense and that the other person stabbed the victim, this explanation does not conform to the evidence. The clothing of appellant's alleged accomplice was obtained and revealed no blood. On the other hand, appellant's clothing was, from top to bottom, stained with blood of the same type as the victim's. Appellant admitted striking the victim in the head with a pool cue. He also produced a hammer which could have inflicted the blows on the victim's head. There is no credible evidence indicating another participant. However, even assuming the truth of appellant's explanation of the events, appellant remains a principal offender.

Finally, with regard to the seventh mitigating factor, appellant's mother, his sister, a university professor and a former employer testified at appellant's sentencing hearing. Testimony revealed that appellant was one of nine children. His father was a heavy drinker and often absent from home. There is no evidence that appellant had been materially deprived, either physically or mentally, during his life. Indeed, his brothers and sisters seemed to have improved themselves. A number of his siblings attended college and three of his brothers served in the United States

Armed Forces. He also enlisted in the military service, but was discharged under circumstances other than honorable. After his discharge from the military service, appellant became involved in the drug culture, worked sporadically, and lost touch with his family. In summary, it appears that appellant had a fairly normal childhood and is of average mental and physical capability. Consequently, we hold that appellant did not present evidence of any mitigating factors which outweigh the aggravating circumstances of aggravated burglary and aggravated robbery.

## III

Our final determination must be whether the death penalty is appropriate in this case. R.C. 2929.05(A) provides, in pertinent part:

"* * * [T]he supreme court shall * * * determine * * * whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the * * * supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. * * *"

R.C. 2929.05(A) continues:

"* * * [T]he supreme court shall affirm a sentence of death only if * * * [it] is persuaded from the record * * * that the sentence of death is the appropriate sentence in the case."

This court has, to date, addressed nine other cases involving the imposition of capital punishment. In eight of those nine cases, the imposition of the death penalty has been upheld. State v. Jenkins, supra (15 Ohio St. 3d 164), involved the murder of a police officer during a bank robbery. In Jenkins the defendant was mentally deficient as evidenced by a very low I.Q., and yet the death penalty was upheld. State v. Maurer (1984), 15 Ohio St. 3d 239, involved the heinous crimes of rape and murder of a young girl. State v. Rogers (1985), 17 Ohio St. 3d 174, dealt with a similarly heinous fact pattern and a defendant with extreme mental problems. In both of these cases this court (with the exception of Justice Wright in Rogers) found the death penalty appropriate. State v. Mapes (1985), 19 Ohio St. 3d 108, and State v. Martin (1985), 19 Ohio St. 3d 122, were qualitatively similar to the case at bar in that they involved robbery-murder and defendants with no significant evidence offered in mitigation. This court found capital punishment an appropriate sentence for these types of cases. In State v. Williams (1986), 23 Ohio St. 3d 16, where robbery was again the aggravating circumstance and an elderly woman was the victim, this court upheld a death sentence. In addition, this court recently upheld a death sentence in State v. Buell (1986), 22 Ohio St. 3d 124, for murder during a kidnapping. Finally, this court upheld death sentences in State v. Brooks (1986), 25 Ohio St. 3d 144, involving the murders of the defendant's three sons.

The imposition of capital punishment in the instant case is most closely

aligned to the facts and circumstances in *Mapes* and *Martin*. Our review of these cases, as well as the other Ohio cases where the death penalty has been imposed, has led this court to the conclusion that capital punishment is neither excessive nor disproportionate to the penalty imposed in similar cases. We, therefore, affirm the court of appeals' finding that the death sentence is appropriate in this case.

## IV

In conclusion, we first find that there is no merit to any of the specific issues raised by appellant concerning the proceedings below. Second, we find that the aggravating circumstances of aggravated burglary and aggravated robbery outweigh any and all of the mitigating factors presented by appellant. Third, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. Thus, in accordance with R.C. 2929.05(A), we affirm the conviction and sentence of death in this case.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.