OPINION
The State of Ohio appeals the decision of the Columbiana County Common Pleas Court wherein the court granted the motion to suppress which was filed by defendants-appellees Ronnie and Wendy Ludington. The state contends that the court erred in finding that the state failed to prove that Mr. Ludington gave voluntary and uncoerced consent to search his home. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF THE CASE
On September 23, 1998, the Ludingtons were indicted for cultivating marijuana in violation of R.C. 2925.04(A), a fifth degree felony as a result of the amount confiscated. The Ludingtons filed a motion to suppress on January 15, 1999, alleging that the consent to search was invalid. The court held a suppression hearing. The following facts are a representation of the testimony of Detective Panezott of the Columbiana County Drug Task Force who was the sole witness at the hearing.
In 1994, Mr. Ludington's roommate reported that Mr. Ludington was growing marijuana in his East Liverpool home. In early 1998, the officers were informed by a marijuana trafficker that the Ludingtons were growing marijuana in their Wellsville home. Based upon these two reports, the officers decided to visit the Ludingtons to seek consent to search their residence.
On March 24, 1998, six officers arrived at the house in task force attire, which consists of labeled clothes rather than uniforms, displayed badges and guns. Detective Panezott and another officer knocked on the door and were met by Mrs. Ludington. The officers asked if they could come in, and Mrs. Ludington consented. The officers related their suspicions and asked for her consent to search for marijuana. She said that her husband would have to make the decision and thus called him at work. It is at this time that Detective Panezott allegedly smelled marijuana growing. When Mrs. Ludington stated that her husband was on his way home, the officers asked her to wait outside with them to avoid the possible destruction of evidence.
Mr. Ludington arrived home thirty minutes later. He was advised of the officers' suspicions and his consent was requested. He inquired, "What if I say no?" The detective allegedly answered, "we would secure the residence and we're going to go ask a Judge if we can get a search warrant for the residence. * * * We smelled it in there. We have a pretty good idea that it is in there. If you say no then we are going to ask a Judge to let us in or you can give us consent. It is your choice." (Tr. 9)
Thereafter, Mr. Ludington signed a consent form. This form was signed by two witnessing officers, neither of whom testified at the hearing. However, Detective Panezott testified that he heard one of the witnessing officers review the consent form with Mr. Ludington. Mr. Ludington also allegedly stated, "It's in there. There's not much." (Tr. 9). On searching the house, the officers found both growing and cut marijuana and paraphernalia utilized in growing.
After hearing this testimony, the court suppressed the evidence. In its February 16, 1999 judgment entry, the court found that the state failed to meet its burden of proving that the consent given by Mr. Ludington was voluntary. The state filed timely notice of appeal and certification under Crim.R. 12(J).
 STANDARD OF REVIEW
Appellate review of a suppression issue is a mixed question of law and fact. State v. Abraham (July 22, 1999), Carroll App. No. 701, unreported. At the suppression hearing, the trier of fact is in the best position to judge the credibility of the witnesses and the weight of the evidence. State v. Mills (1992),62 Ohio St.3d 357, 366, citing State v. Fanning (1982), 1 Ohio St.3d 19,20. Hence, the appellate court shall accept the factual determinations of the trial court unless they are not supported by the evidence. The appellate court shall not reverse a court's decision to suppress due to a different interpretation of the facts as they are not permitted to substitute judgment on such choices. Upon accepting the factual findings of the trial court, the appellate court then independently determines whether the proper legal standard was applied.
ASSIGNMENT OF ERROR NUMBER ONE
The state sets forth three assignments of error, the first of which provides:
 "THE TRIAL COURT'S DECISION TO SUPPRESS THE EVIDENCE BECAUSE OF COERCION WAS ERROR BECAUSE THE COURT BASED SAID DECISION UPON FACTS NOT IN THE RECORD."
The state contests two factual findings of the trial court. First, the state takes issue with the following finding, "When the husband returned from work he was not allowed to enter his home, even though he requested to enter and use the phone to contact his lawyer for advice." (J.E. at 2). The state interprets this statement as the court's belief that the officers refused to allow Mr. Ludington to contact his attorney. The state contends that the Ludingtons were not being detained and were free to go use a telephone anywhere they pleased except their house.
Detective Panezott testified that Mr. Ludington may have asked to call his attorney. He stated that the Ludingtons were free to go, although whether they knew their status is uncertain. The detective also said that Mr. Ludington was permitted to enter to call his attorney after the consent form was signed and the police began their search. It appears that the above statement was merely the court noting that Mr. Ludington was precluded from entering his house and implying that this made it more difficult to call his attorney. It is not a statement that he was totally precluded from calling an attorney.
The state next complains about the following factual finding, "The police officers did not have a Search Warrant but indicated to the defendants that if they did not cooperate, `they would get a search warrant'." (J.E. at 2). The state points out that the testimony established that the detective informed Mr. Ludington that they would "ask a Judge if we can get" a warrant not that they "would get" a warrant. It does appear that the court misquoted the detective. We must point out that, strangely, the quotation marks around "they would get a search warrant" were added by hand after the judgment entry was typed.
Absent the quotation marks, the court's statement that the officers would get a warrant is an interpretation of the occurrences. The detective told Mr. Ludington that they would ask the judge for a warrant, that they smelled marijuana and that they had a pretty good idea that it was in there. The judge may have determined that a layman like Mr. Ludington would reasonably interpret these statements to mean that the officers possess probable cause to obtain a warrant from a judge. Regardless, this one misquote in the judgment entry does not invalidate the court's decision to suppress the evidence. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE COURT ERRED IN ITS DECISION TO SUPPRESS ANY AND ALL PHYSICAL EVIDENCE AS THE CIRCUMSTANCES SURROUNDING THE CONSENT GIVEN BY DEFENDANT/APPELLEE RONNIE LUDINGTON DO NOT INDICATE COERCION."
Under this assignment, the state insists that Mr. Ludington voluntarily consented to the search of his house.
We begin by noting that a warrantless search is per se unreasonable and any evidence obtained as a result of the situation surrounding the search is inadmissible under the fruit of the poisonous tree doctrine. However, there are a few specifically established and well-delineated exceptions to the Fourth Amendment's warrant requirement. Katz v. United States
(1967), 389 U.S. 347, 357. One of the exceptions to a warrant and to probable cause is where a search is conducted pursuant to consent. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. Basically, a person waives his Fourth Amendment rights by consenting to a warrantless search. State v. Barnes (1986),25 Ohio St.3d 203, 208. Consent may be volunteered by the owner of the property or a person with common authority over the property.State v. Reynolds (1998), 80 Ohio St.3d 670, 674.
In order to use the consent exception, the state has the burden of proving by "clear and positive evidence" that the consent was voluntarily given. State v. Posey (1988), 40 Ohio St.3d 420,427, quoting Bumper v. North Carolina (1968), 391 U.S. 543, 548
(although we do not see language requiring clear and positive evidence in Bumper, it has been declared as the standard by the Ohio Supreme Court and the state concedes that this is the proper standard). "[W]hether consent to search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality of the circumstances." Schneckloth, 389 U.S. at 227.
An extreme example of coerced consent is where the police falsely tell a citizen that they have a search warrant. Bumper,391 U.S. 543. Blatant deception such as this is not required to invalidate consent. It has been recognized that even the existence of subtle coercion may flaw a person's judgment, inhibit free choice and invalidate consent. United States v. Watson (1976),423 U.S. 411, 424; Schneckloth, 389 U.S. at 227 (holding that duress and coercion can be implied). Account should be taken of the possibility of a vulnerable subjective state of the accused.Schneckloth, 389 U.S. at 229. The court should also weigh the officer's need to seek consent to search a home against a citizen's right to privacy within that home.
In the case at bar, the trial court found that under the totality of the circumstances, the consent given by Mr. Ludington was coerced. For instance, the detective admits that the officers specifically went to the house with the intent to seek the Ludingtons' consent to search their home in order to discover evidence against them. It is relevant that Mr. Ludington was called home from work to address a situation where police were attempting to talk his wife into allowing them to search the house. When he arrived, six officers were there to meet him. They were wearing task force outfits with identification hanging from their necks and carrying guns. They had his wife waiting outside with them for thirty minutes. They would not allow him to enter his own home. (Regardless of whether this restriction was lawful, it is still a factor in determining the voluntariness of consent).
The officers informed Mr. Ludington that they had reports that he was growing marijuana. There is no indication that the officers informed appellant of the source of these complaints. It should be noted that one of these complaints occurred four years earlier and concerned Mr. Ludington's former residence in another town. It should also be noted that the other complaint came from a marijuana trafficker whose house had been searched a month or two earlier.
Mr. Ludington was also informed that the officers smelled marijuana; whether the officers informed him that they smelled it growing rather than burning is unknown. Upon inquiring into the effect of refusal, appellant was informed that if he refused consent, the officers were prepared to go to a judge with the reports and the allegation that they smelled marijuana. They told him that they had "a pretty good idea that it is in there." (Tr. 9). As aforementioned, a person could draw a reasonable inference from this statement that the officers were confident in their ability to obtain a warrant. The court determined that a reasonable person in this situation would feel that the police were implying that it was futile to refuse consent. See State v.Moncrease (Apr. 13, 2000), Cuyahoga App. No. 76145, 76146, 76147, unreported, 3-4.
The state called one officer out of six to the stand. Although there is no conflicting testimony in this case, the court as the fact-finder and the judge of credibility obviously found that the officer's testimony that consent was freely given was insufficient to meet the state's burden of proving voluntariness by clear and convincing evidence. Considering the number of officers, their characterization of the incriminating evidence, the restriction upon entering the home and other relevant factors mentioned above, we cannot say that the court was incorrect in its assessment of the totality of the circumstances. As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
The state's last assignment of error provides:
 "THE TRIAL COURT ERRED IN ORDERING THE SUPPRESSION OF STATEMENTS OF DEFENDANT/ APPELLEE/APPELLEES SINCE SAID STATEMENTS WERE NOT MADE IN A CUSTODIAL SETTING AND WERE NOT THE PRODUCT OF ANY DURESS OR COERCION."
The state briefly argues that the statements made by appellees should not be suppressed as they were not under custodial interrogation and thus Miranda warnings were not required. However, the court did not suppress statements due to the lack of Miranda or the existence of custodial interrogation. The court suppressed the statements under the fruit of the poisonous tree doctrine. See Wong Sun v. United States (1963),371 U.S. 471, 484.
For instance, Mr. Ludington's alleged statement, "It's in there. There's not much." was suppressed as it was only made in recognition that the officers would be searching his house as a result of the consent form, later found to be involuntarily signed. The record before this court does not demonstrate the existence of any other incriminating statements made by appellees. This assignment of error is overruled.
For the foregoing reasons, the trial court's judgment is hereby affirmed.
 _____________ VUKOVICH, J.
Donofrio, J., concurs, Waite, J., concurs.