DECISION AND JUDGMENT ENTRY
This consolidated appeal comes to us from the Wood County Court of Common Pleas. There, appellant was convicted and sentenced for menacing by stalking, a felony. Eventually, the court revoked its sentence of community control and imprisoned appellant. Because we conclude that the jury's verdict was supported by the evidence and the revocation of community control sanctions was not an abuse of discretion, we affirm.
Heather Stefango described her relationship with appellant, Jason Palicki, as a "roller coaster ride." The two met and began dating in 1996. After a period of time, Stefango became dissatisfied with the relationship and sought to end it. Appellant, however, disagreed with this decision and made unsolicited advances to Stefango which eventually resulted in appellant's misdemeanor conviction for menacing by stalking and his being the subject of a protective order issued by the Perrysburg Municipal Court which directed him to have no further contact with Heather Stefango.
In spite of the no contact order, appellant and Stefango reunited in the fall of 1998 with appellant moving into Stefango's condominium. At Stefango's request, the municipal court dissolved the protective order.
By May 1999, Stefango again became dissatisfied and ordered appellant out. It is appellant's behavior after this date which forms the basis of the charge of which he was convicted.
According to Heather Stefango, at the end of June, appellant appeared at her back door and confronted her about a date she had with another man two days prior. Stefango testified that appellant knew her date's name and where he lived. Appellant told her she did not have permission to see the man again. Stefango asked appellant to leave. When he refused, she fled. She returned later with a friend and found a note from appellant inside her home.
The following day, appellant called Stefango's home several times, paged her once and left two voice mail messages. Stefango called the police. Officers documented the calls and visited appellant at his home, advising him that Stefango desired no further contact with him. On July 9, appellant again left a message on Stefango's voice mail.
On the morning of July 14, a babysitter working in Stefango's home noticed that a second floor window air conditioner was askew. The babysitter called police. Investigating officers found a neighbor who reported having been awakened at 3:00 a.m. by a young white man running across Stefango's porch roof. Fingerprints found on the air conditioner were later identified as appellant's.[1] A week later, Stefango and the man she was currently dating were in her home when they heard the air conditioner again being removed. Both identified appellant as the man they saw on the porch roof that night.
Anonymous telephone calls, hang-ups and pages continued into August and September, even after appellant was indicted on charges of menacing by stalking for his conduct between June 15 and July 29, 1999, and burglary for his alleged July 14, 1999 entry from the porch roof. The menacing count was charged as a fifth degree felony with a specification of a prior misdemeanor conviction.
Appellant pled not guilty to both counts and moved, _in limine, to exclude evidence of events outside the time frame of the indictment. The court granted the motion to the extent that the "other acts" evidence did not go to prove identity.
The matter proceeded to a jury trial. At the close of the state's case, the trial court dismissed the burglary count. The jury, however, convicted appellant of felony menacing by stalking, following which the court sentenced him to ninety days local incarceration, completion of the Northwest Community Correction Center Program and three years community control.
In February 2000, appellant moved pro se to amend his sentence to allow alternative treatment in lieu of the Northwest Program. At the same time, he declined entry into the Northwest Program which caused the state to petition for a revocation of the community control sentence. The court appointed counsel for appellant and held a hearing on the revocation petition at which appellant again refused to enter the Northwest Program. The court then found that appellant violated his community control conditions and sentenced him to eleven months imprisonment with the Ohio Department of Rehabilitation and Corrections.
Appellant appealed his original conviction and filed a second appeal on the revocation of his community control. We consolidated the appeals and the matter is now before us on the following four assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ALLOWING ADMISSION INTO EVIDENCE OF PRIOR ACTS, THEREBY VIOLATING APPELLANT'S RIGHT TO A FAIR TRIAL PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, § 10 OF THE OHIO CONSTITUTION.
"SECOND ASSIGNMENT OF ERROR
 "EVIDENCE THAT APPELLANT COMMITTED THE OFFENSE OF MENACING BY STALKING WAS INSUFFICIENT AS A MATTER OF LAW.
"THIRD ASSIGNMENT OF ERROR
 "APPELLANT'S CONVICTION FOR MENACING BY STALKING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"FOURTH ASSIGNMENT OF ERROR
 "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT."
 I.
Appellant, in his first assignment of error, asserts that the court violated its own in limine order when it permitted a Perrysburg police officer to testify to an event which comprised the pattern of behavior that led to appellant's misdemeanor menacing by stalking conviction. Appellant did not object to this testimony at trial.
There are a number of reasons this assignment of error is meritless. An order granting a motion in limine is a tentative ruling about an anticipated evidentiary issue and need not be reviewed unless error is preserved by objection in the context of a trial. State v. White (1982),6 Ohio App.3d 1, 4. No such objection was raised in this matter.
Rulings on the admissibility of evidence rest in the sound discretion of the court and will not be reversed absent an abuse of that discretion. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An abuse of discretion is more than an error of law or of judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable.State v. Long (1978), 53 Ohio St.2d 91, 98. Here, the testimony presented was minimal and the court instructed the jury both before the trial and immediately prior to deliberation that it was not to consider outside the "June 15 to July 29 time frame." Moreover, the jury is presumed to have followed the court's instruction. State v. Dunkins
(1983), 10 Ohio App.3d 72, 74.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his second and third assignments of error, appellant argues that his conviction was improper by virtue of either insufficiency of evidence or as being against the manifest weight of the evidence.
In a criminal context, a verdict may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt.Id. at 390 (Cook, J. concurring); State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley (1978),56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
The version of the menacing by stalking statute, R.C. 2903.211, effective in mid-1999[2] provided that:
 "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 "(B) Whoever violates this section is guilty of menacing by stalking, a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section, menacing by stalking is a felony of the fifth degree.
"(C) As used in this section:
 "(1) `Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.
 "(2) `Mental distress' means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."
Appellant was repeatedly warned by Heather Stefango, her friends and the police that his uninvited advances were distressing to Stefango. At trial, evidence was presented which, if believed, would amount to a pattern of conduct involving the exact conduct about which he had been warned. Stefango testified that appellant's actions made her frightened to stay at home or travel alone. She sought treatment from a mental health professional. Appellant's prior misdemeanor stalking conviction was unrefuted. Consequently, there was sufficient evidence presented which, if believed, would establish all the elements of the offense of menacing by stalking. Accordingly, appellant's second assignment of error is not well-taken.
With respect to the weight of the evidence, we have carefully reviewed the complete record of these proceedings and fail to find anything to suggest that the jury lost its way or that the verdict represents a manifest miscarriage of justice. Accordingly, appellant's third assignment of error is also not well-taken.
 III.
Appellant's remaining assignment of error concerns the revocation of his community control. Appellant does not argue that he was not in violation of his community control conditions, nor does he suggest that the sentencing decision was procedurally flawed. Rather, he maintains that the trial court abused its discretion when it concluded that the shortest prison term under the law would demean the seriousness of the offense and not adequately protect the public.
R.C. 2929.14(B) requires that such a finding be made in order to impose a sentence greater than the minimum for an offender who has never before served a prison term. Appellant insists that such a determination is logically inconsistent with the prior finding, made only three months before, in which the court concluded that community control was not demeaning to the offense.
The difference in the findings reflects more than the passage of time. Appellant willfully chose not to participate in the Northwest program. At the revocation hearing, the court repeatedly advised appellant that he was still eligible for the Northwest program. Several times during this hearing, the court implied that, even at that late date, the court might view appellant favorably if he changed his mind. Finally, the court advised appellant that if he did not change his mind and withdraw his rejection to the Northwest program that he would be found in community control violation and would be sentenced to prison. The court even asked appellant what his choice was. Clearly, this in itself demonstrates appellant's willful rejection of the court's authority and, arguably, a pathological refusal to take steps to remedy the behavioral patterns which put him into this position.
Under these circumstances, we cannot say that the court erred in imposing sentence. Accordingly, appellant's fourth assignment of error is not well-taken.
On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Costs to appellant.
 __________________________ SHERCK, J.
 Peter M. Handwork, J., Richard W. Knepper, P.J., JUDGES CONCUR.
[1] The state fingerprint expert could not pinpoint a time the fingerprints were made on the air conditioner. Appellant testified that he, in fact, had installed the air conditioner earlier in the spring while he and Stefango were still together. At the close of the state's case, the court granted a motion to dismiss the burglary count.
[2] Effective 3-30-99. The statute was significantly amended effective 3-10-2000.