OPINION
{¶ 1} Jory D. Leedy was found guilty by the Montgomery County Court of Common Pleas following a plea of no contest of two counts of gross sexual imposition. He was sentenced to two years of imprisonment and designated a habitual sex offender.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} In a June 25, 2002 conversation with Detective Julie Stephens, an eleven-year-old boy (hereinafter referred to as "the victim") alleged that Leedy had engaged in inappropriate sexual contact with him. Leedy knew the victim through the Big Brother program. On several occasions, the victim and his brother went to Leedy's home or out of town with Leedy. The victim told Detective Stephens that he had been made to shower with Leedy and that Leedy had washed him, touching the boy's penis and buttocks. Leedy also slept with the victim on the couch of his home and "cuddled" with the victim while the victim's brother slept in the bedroom.
 {¶ 4} Following her conversation with the victim, Detective Stephens contacted Leedy on June 27, 2002. When she explained why she needed to speak to him, Leedy agreed to come in to speak with her. He met with Detective Stephens and a victim advocate. Detective Stephens informed Leedy that he was not under arrest and that he was free to leave. When Leedy had been informed of the victim's allegations, he stated that he had been "trying to help" the boy, who did not have a good home environment. He admitted to having showered with the victim, but he claimed that the victim "would just jump in with him" when he was in the shower. He also admitted to having slept on the couch with the victim because the victim "always wanted to cuddle with him." Following this interview, Leedy was allowed to leave.
 {¶ 5} Detective Stephens asked Leedy to come in on June 28, 2002 for further questioning. He agreed and arrived at the Safety Building in Dayton, where police headquarters is located, at 1:00 p.m. that day. When he arrived, Leedy was taken to a conference room with Detective Stephens and Detective Jim Kelly and advised of his rights by Detective Stephens. Leedy initialed all five rights on a pre-interview form and signed a waiver of his rights. He then admitted to having touched the victim for sexual gratification and provided the dates on which he had showered with the victim. Leedy also told the detectives that he had attempted to get help in the past but had been unsuccessful in doing so. Following this two-hour interview, Leedy was arrested and taken to the county jail.
 {¶ 6} Approximately six hours following Leedy's arrest, Detective Stephens spoke to Leedy again in the county jail to give him a message. She also wanted to get a written statement from Leedy. When Detective Stephens arrived, Leedy was speaking to a representative from Pre-Trial Services who asked Detective Stephens if Leedy would be getting out that evening. Detective Stephens replied that he would not be getting out that evening. When she began speaking with Leedy, Detective Stephens advised him that "he still had the same rights as he had earlier" and that "he could still talk to an attorney." Leedy agreed to speak to her. Detective Stephens asked him to write out a statement. She reminded him that he kept telling her that he needed help and suggested that he write out a statement explaining what he had done and what kind of help he needed and apologizing to the victim. Leedy provided such a statement, and the interview concluded thirty or forty minutes later.
 {¶ 7} On July 30, 2002, Leedy was indicted on three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). On August 22, 2002, he filed a motion to suppress his written statement. Following a hearing, the trial court overruled that motion on September 26, 2002. Leedy then pled no contest on October 15, 2002 to two of the three counts, and the state dismissed the remaining count. On December 17, 2002, the trial court sentenced Leedy to two years on each count, to be served concurrently, and designated Leedy a habitual sex offender.
 {¶ 8} Leedy appeals, raising one assignment of error.
 {¶ 9} "The trial court committed prejudicial error when it failed to sustain appellant's motion to suppress the written statement, and appellant's constitutional guarantee against self-incrimination, guaranteed by the Fifth and Fourteenth amendments to the United States Constitution and Section Ten, Article One of the Ohio Constitution, were violated."
 {¶ 10} Leedy argues that the trial court erred in overruling his motion to suppress his written statement because Detective Stephens did not advise him of his Miranda rights at the time of the interview in which he gave a written statement.
 {¶ 11} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress: "(W)e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586,592, 639 N.E.2d 498.
 {¶ 12} Pursuant to Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, a defendant subjected to custodial interrogation must be advised of certain rights and make a knowing and intelligent waiver of those rights before statements made during the interrogation will be admissible in a trial against him. However, where the defendant is subjected to several interrogations, the police are not always required to re-administer Miranda warnings prior to each interrogation. See Statev. Mack, 73 Ohio St.3d 502, 513-14, 1995-Ohio-273, 653 N.E.2d 329; Statev. Brewer (1990), 48 Ohio St.3d 50, 60, 549 N.E.2d 491; State v. Barnes
(1986), 25 Ohio St.3d 203, 208, 495 N.E.2d 922. Rather, the proper inquiry is whether the defendant remained aware of his rights. See Statev. Butler (Sept. 18, 1998), Montgomery App. No. 16852. In determining whether the defendant remained aware of his rights, we consider the totality of the circumstances, including:
 {¶ 13} "(1) the length of time between the giving of the first warnings and subsequent interrogation, (2) whether the warnings and the subsequent interrogation were given in the same or different places, (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, (4) the extent to which the subsequent statement differed from any previous statements, and (5) the apparent intellectual and emotional state of the suspect." Id., citingState v. Roberts (1987), 32 Ohio St.3d 225, 232, 513 N.E.2d 720.
 {¶ 14} In this case, the trial court reasonably concluded that the totality of the circumstances indicated that Leedy remained aware of his rights at the time he gave his written statement. Initially, we note that Leedy was properly advised of his Miranda rights at the interrogation at 1:00 p.m. on June 28, 2002. He initialed each right to indicate that he understood it, and he signed a waiver of those rights. Turning to the question of whether the totality of the circumstances indicated that Leedy remained aware of those rights at the time he made his written statement, the only factor arguably weighing in Leedy's favor is that the written statement was procured in a different location than where theMiranda warnings were given. (The Safety Building and county jail are separated by a parking lot and joined by an above ground, elevated walkway.) The remaining factors weigh in favor of a conclusion that Leedy remained aware of his rights. First, Leedy's written statement was given approximately eight hours after he had been advised of his Miranda
rights. While eight hours is a substantial period of time, courts have allowed the admission of statements made after a greater lapse of time. See, e.g., Brewer, supra, at 60; Barnes, supra, at 208. Second, the same officer, Detective Stephens, advised Leedy of his Miranda rights during the afternoon interview and conducted the interview in the evening at the county jail. Third, Leedy's written statement did not differ significantly from the oral statement that he had made earlier in the day. It merely provided more detail regarding his attempts to "get help." Fourth, there is nothing in the record to indicate that Leedy's intellectual or emotional state were such that he was not aware of his rights. Leedy was not coerced in any way by Detective Stephens. She asked if he would give a written statement, and he agreed to do so. She did not make any threats or promises to procure his statement. Although Leedy argues that Detective Stephens informed a representative from Pre-Trial Services that he would not be getting out that evening, she in no way threatened Leedy or used this fact to coerce his written statement.
 {¶ 15} We are further persuaded by the fact that Detective Stephens did inform Leedy that "he still had the same rights as he had earlier" and that "he could still talk to an attorney." Although he was not fully re-advised of his Miranda rights, he was reminded that he had those rights, and he was specifically informed that he could speak to an attorney. Given the totality of these circumstances, we cannot conclude that the trial court erred in overruling Leedy's motion to suppress.
 {¶ 16} The sole assignment of error is overruled.
 {¶ 17} The judgment of the trial court will be affirmed.
FAIN, P.J. and GRADY, J., concur.