**The STATE of Ohio**

v.

**ROBINSON.**

 2009-Ohio-7087.]

Court of Common Pleas of Ohio,
Summit County.

No. CR 2008–11–3630.

Decided June 25, 2009.

40

John Green, Assistant Prosecuting Attorney, for plaintiff.

Kirk A. Migdal, for defendant.

---

PARKER, Judge.

{¶ 1} This matter came before the court on June 9, 2009, for a hearing on the defendant's motion to suppress any and all evidence the state plans to use at trial on the ground that such evidence was obtained in an unconstitutional search and seizure of his property. At the core of the defendant's motion lies the question of whether a valid consent to search may be given when officers seeking to gain entry into a defendant's home without a search warrant use deception to obtain consent.

{¶ 2} On direct examination of Detective Dan Wagner, of the Springfield Township Police Department drug unit, the following information was presented. On October 31, 2008, an unknown informant called the Akron Police Department and relayed information to detectives there that the defendant, Lester Robinson, was operating a methamphetamine lab at his trailer at 129 Plaza Court in Lakemore. An Akron detective called Detective Susan Barker of the Springfield Township Police Department drug unit to relay that information to her. Detective Barker then contacted Detective Dan Wagner and informed him that she had been provided with information that there was at that time a methamphetamine

lab at the Plaza Court address in Lakemore and that the cook's [1] name was Les. Detective Wagner went to the address about an hour later with Sergeant Ron See of the Lakemore Police Department. After knocking on the door repeatedly, looking in the windows and detecting no sounds or movements inside, they determined that nobody was home, and they left.

{¶ 3} About an hour later, Detective Wagner received a second call from Detective Barker, who had again received a call from an Akron detective indicating that Les, with knowledge that Wagner had been there earlier, was back at the trailer dismantling the meth lab. Shortly after receiving that call, Wagner contacted Sergeant See. The two planned to meet out at the trailer. When Wagner arrived, he saw that See was outside the trailer talking with the defendant, Les Robinson. He approached and told Robinson that he was there to investigate an allegation that Robinson had a meth lab in his trailer. Robinson told him there was none of that going on in there. Wagner asked Robinson if he could search his trailer to determine whether the complaint was true or not. Robinson asked Wagner if he needed a search warrant to do that. Wagner told him that he didn't need a warrant if he had Robinson's cooperation.

{¶ 4} Robinson indicated that he was locked out of the trailer. Wagner asked him whether they could look around in his trailer if they helped him get into it. Robinson said, "Okay." The three men walked around outside the trailer and came to a window where once an air conditioner had been placed. There was a piece of plywood in the window opening with a cutout for the air conditioner, in which insulation had been secured with duct tape. Robinson indicated to Wagner and See that they could probably enter that window and started to remove the insulation and tape. When Robinson had removed all the material, he grabbed a ladder and propped it up next to the opening.

{¶ 5} He tried several different ways to gain entry through the window opening but was unable to do so. Detective Wagner, who had not participated in opening the cutout for entry, offered to go through and once inside to directly let Robinson in the door. Robinson, frustrated, said, "Why didn't you say that in the first place?" Detective Wagner went in the window and made his way to the door. He testified that he was not at that time searching for anything related to a meth lab. He opened the door and allowed Robinson, Sergeant See, and Chief Ray inside. Robinson sat down at the kitchen table. Once all were inside, Sergeant See and Chief Ray stood with Robinson while Detective Wagner searched the trailer. At no time did Robinson ask Wagner to stop searching or to get a warrant before searching any more.

---

1. "Cook" is a term of art in meth-lab parlance meaning the person making the methamphetamine.

{¶ 6} In *State v. Posey* (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (quoting *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576), our Supreme Court said that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. "Consequently, evidence obtained in a warrantless search is generally inadmissible, and under the 'fruit of the poisonous tree' doctrine, such evidence cannot serve as probable cause to support a subsequent warrant. *Posey*, supra, citing *Segura v. United States* (1984), 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (citing *Wong Sun v. United States* (1963), 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441). However, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Id., citing *Schneckloth* at 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (citing *Davis v. United States* (1946), 328 U.S. 582, 593–594, 66 S.Ct. 1256, 90 L.Ed. 1453).

{¶ 7} In *State v. Barnes* (1986), 25 Ohio St.3d 203, 208–209, 25 OBR 266, 495 N.E.2d 922, citing *Davis v. United States* (1946), 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; *Schneckloth*; *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 23 OBR 295, 491 N.E.2d 1129, our Supreme Court noted that a person waives his Fourth Amendment protection by consenting to a warrantless search. Further, the court noted that the standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent. *Barnes*, citing *Schneckloth*; *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.

{¶ 8} On the testimony elicited on direct examination it appears that Robinson validly consented to the search of his trailer. There appears to have been no coercion or any other factor present that would suggest Robinson's consent was not freely given. There is no indication other than Robinson's original inquiry concerning the need for a warrant that Robinson told the officers they might need a warrant to search his trailer. In fact, it appears that he was satisfied that no warrant would be required if he cooperated. He told the police that it would be okay for them to search the trailer if they could get him inside. At no time did he tell Detective Wagner to stop searching once he had begun. To this point the record simply does not indicate anything to suggest that the warrantless search was invalid and that Robinson's consent was not freely given.

{¶ 9} However, cross-examination of Detective Wagner brought out quite a new and different aspect to the totality of the circumstances for the court to

consider. In Detective Wagner's cross-examination testimony it was established (1) that he didn't believe he had probable cause to enter Robinson's trailer when he arrived because there was not present the characteristic smell of chemicals associated with meth labs, (2) that he would have needed something more to get into the trailer, (3) that he needed to have Robinson's consent to be able to search the trailer, (4) that Robinson never told him "yes" when asked if the police could search his trailer, (5) that he didn't take Robinson's question, "You need a warrant, don't you?" to be consent because he didn't go into the trailer at that time, (6) that Robinson didn't say to go ahead and search the trailer after Wagner informed him that he needed Robinson's cooperation, (7) that he told Robinson all he wanted to do was to look around and remove anything hazardous if he found it, (8) that he did not tell Robinson that if he found something related to a meth lab he would arrest him but that he made it clear to Robinson that if he found anything he was just going to remove it and *not* arrest him, (9) that when Robinson asked Wagner if he would go to jail if Wagner found anything, Wagner told him there might be things inside that could be from a previous tenant and that Robinson probably wouldn't know meth lab items, (10) that Detective Wagner admitted that he was lying to Robinson to get his consent to search the trailer and that the reason he was lying was to make Robinson comfortable so that he could get his consent, (11) that he wanted to get Robinson's permission, and (12) that he lied to him twice to get it. He was asked, "You were deceiving him to get into his trailer, to get his consent?" He responded, "I told him we were there on a meth lab complaint, okay. And yes, I am going to—I'm going to try everything I can to substantiate [the presence of a meth lab] for the safety of everyone around that trailer."

{¶ 10} "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797.

{¶ 11} In *United States v. Jones* (C.A.6, 1981), 641 F.2d 425, 429, the court stated, "The burden of proving a valid consent is on the government, and as we have repeatedly held, this burden requires clear and positive proof that the consent was uncontaminated by duress, coercion, or trickery."

{¶ 12} The Ohio Sixth Appellate District has determined that "clear and positive" proof is indistinguishable from clear and convincing proof. In *State v. Danby* (1983), 11 Ohio App.3d 38, 41, 11 OBR 71, 463 N.E.2d 47, the court determined that "clear and positive proof differs in no significant respect from clear and convincing proof." "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being

more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118. This court finds this notion to be persuasive.

{¶ 13} In this matter there is no question that Robinson consented to the search. He agreed to allow Detective Wagner to search the trailer in exchange for his help in getting Robinson into the trailer.[2] The facts established that he tore apart a window about five feet off the ground that had been closed up with insulation where an air conditioner had been removed. He found a ladder for Detective Wagner to climb so he could crawl inside the trailer through the air conditioner cutout. Once Detective Wagner got inside through the window and opened the door for Robinson, Sergeant See, and Chief Ray to enter, Robinson sat down at the table and waited while Detective Wagner searched his trailer. This scenario does not at all suggest that Robinson was not a willing participant in the search process. It is clear that he gave his consent for the search.

{¶ 14} The central question though is, did Robinson *freely* give that consent to the search that Detective Wagner conducted? This court answers the inquiry in the negative. May officers employ guile and deception and use trickery to gather information in investigations and interrogations? Yes, unquestionably some situations call for law enforcement officers to outsmart those who choose to break the law and use any and all methods to further their purpose. In this instance however, the court is hard-pressed to see the necessity for the deception employed. When asked whether he had probable cause to obtain a search warrant at the time he was seeking to gain Robinson's consent, Detective Wagner said that he did not and that he needed something else.

{¶ 15} If the detective did not believe that he had probable cause to obtain a search warrant, why was he at Robinson's residence seeking entry? In order for a search or seizure to be reasonable under the Fourth Amendment, it has to be based on probable cause and executed pursuant to a warrant. *State v. Moore* (2000), 90 Ohio St.3d 47, 49, 734 N.E.2d 804, citing *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Probable cause is defined as "a reasonable ground for belief of guilt." Id., quoting *Carroll v. United States* (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543.

{¶ 16} There were two tips provided by Akron detectives alleging first that there was a meth lab at Robinson's trailer, and the second that Robinson knew

---

**2.** In fact, as it turned out, Wagner did nothing to open the trailer for access. It was Robinson who tore the window insulation apart, secured the ladder, and attempted to crawl in. Detective Wagner wasn't involved until he told Robinson, who could not maneuver himself into the cutout, that he could make it through the opening. Robinson's reply was, "Why didn't you say that in the first place?"

that the police had been to his trailer and that he was dismantling the meth lab an hour after the police first arrived to investigate. The court finds it implausible that with the information provided in the two tips Detective Wagner didn't believe when he went out to Robinson's trailer that he had probable cause to investigate whether he needed to seek a search warrant.

{¶ 17} Detective Wagner freely admitted he lied to Robinson in order to gain entry into his trailer. He lied when he told Robinson that he would merely look around to see if there was anything there from a previous tenant. He lied when he told Robinson that if he found anything he would just remove it and not arrest Robinson. He said that he was lying to try to make Robinson comfortable so he could get his consent for the search he intended to conduct. He said that he would do anything he had to do to substantiate the presence of a meth lab to protect the safety of everyone around the trailer.

{¶ 18} The testimony on redirect did establish that there are hazards inherent with meth labs. These hazards are a high risk of fire, storage of very caustic, corrosive chemicals in residential areas, byproducts of production being flushed into the water system or dumped outside, and the potential fatal nature of the gases produced by the manufacture of the methamphetamine. However, testimony on cross-examination established that on October 31, 2008, at Robinson's trailer there were no characteristic smells associated with methamphetamine production. While there were other trailers in close proximity in the fairly densely populated trailer park, without the characteristic odors in the area, it seems that the manufacturing process was not taking place at that time.

{¶ 19} The court notes in light of our appeals court's decision in *State v. White,* 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904, at ¶ 20, that the state might have presented a stronger argument for public safety to justify the initial entry into the trailer. In that case, the court held that "in the case of methamphetamine laboratories, if officers have a reasonable belief, based upon specific facts discovered prior to entry, that a methamphetamine laboratory is being operated at a particular location, the emergency aid exception applies and the officers may enter the premises in order to protect the public." Id.

{¶ 20} Under *White,* the state might have amplified and emphasized the specific information provided by the Akron detectives to bolster its reasonable belief of Robinson's guilt as to that information: Was the information provided to the Akron detectives obtained from a reliable source? Had that source been used in previous investigations? Were Akron detectives engaged in an independent investigation from which they derived this information? Was this address known to the Akron detectives as a meth lab? Did Akron detectives know Robinson to be a meth cook? Had Robinson's name come up in other investigations? Without more information and on the state of the evidence presented, this court

will not stretch the *White* court's finding concerning the emergency-aid exception to the warrant requirement to allow the fruits of the search to be used against Robinson.

{¶ 21} The state has failed to meet its burden of proof that valid consent was obtained. See *United States v. Jones,* 641 F.2d 425. While Robinson gave his consent for Detective Wagner to search his trailer, that consent was vitiated by the deception Detective Wagner employed to gain it. For the foregoing reasons, the court finds the defendant's motion to be well taken and hereby grants it. Any and all evidence seized as a result of Detective Wagner's search of Robinson's trailer is suppressed and must not be presented to support the charges against him.

{¶ 22} There is no just cause for delay.

So ordered.