OPINION
Appellant Craig Allen Limbach appeals his multi-count conviction and sentences in the Court of Common Pleas, Stark County. The relevant facts leading to this appeal are as follows.
In March 2001, an employee of a local computer shop contacted the Massillon Police Department concerning apparent child pornography found loaded on a computer which had been brought for repair. Massillon Detective Bobby Grizzard took the case, and subsequently determined that the computer's owner, Anita Hoot, had received the images over the Internet. Hoot did not provide a name of the source, but gave Grizzard an address and description of the person. Grizzard thereupon assumed Hoot's e-mail identity and engaged in computer correspondence with the suspect, whom Grizzard found to be appellant. During this period, appellant sent e-mails, which included child erotica images, to Grizzard in his investigatory role. Appellant also therein discussed the possibility meeting with Hoot for the purpose of having sex with two children Hoot had been babysitting, ages one and two-and-a-half. Appellant arranged a rendezvous for April 20, 2001, at the Ames Department Store parking lot on Lincolnway East. In preparation, Grizzard on the day prior obtained a search warrant for appellant's home, authorizing a search for evidence of child pornography. Grizzard planned to execute the warrant the next day, after the anticipated arrest of appellant.
Shortly after 3 p.m. on April 20, 2001, appellant arrived at the parking lot, slowly driving around the area. Massillon police officers in cruisers thereupon stopped and searched appellant. They discovered on appellant's person a tube of K-Y Jelly lubricant, some napkins, and three computer disks containing child pornography images. A digital camera was also located on the front seat of appellant's vehicle. Appellant was transported to the Massillon police station, where he was interviewed for approximately 45 minutes by Grizzard. The interview was videotaped with appellant's knowledge. During this time, appellant agreed to cooperate by consenting to a search of his home, where he admitted that he had a collection of child pornography computer disks. Grizzard thus thereafter returned the search warrant to Massillon Municipal Court unexecuted.
On June 7, 2001, the Stark County Grand Jury returned a twenty-count indictment against appellant as follows: two counts of attempt to commit rape, two counts of attempted illegal use of a minor in nudity-oriented material, the five counts of pandering sexually-oriented matter involving a minor, five counts of illegal use of a minor in nudity-oriented material (F2), three counts of pandering sexually-oriented matter involving a minor, and three counts of illegal use of a minor in nudity-oriented material (F5). During pretrial, appellant filed a motion to suppress his confession to Detective Grizzard, as well as evidence obtained during the search of appellant's residence. The trial court overruled the motion to suppress.
On October 19, 2001, appellant entered a plea of no contest to the four counts in the indictment which related to the evidence obtained during the search of his home, and entered a plea of guilty to the remaining counts. On November 19, 2001, trial court conducted a combined sentencing and classification hearing. The trial court found appellant to be a sexual predator. The trial court then imposed an aggregate term of 44 years and 11 months. The two attempted rape sentences (eight years each count) and eight pandering sexually oriented matter sentences were imposed consecutively. Additionally, the two attempted illegal use of a minor in nudity-oriented material sentences were imposed concurrently with each other, but consecutively with remaining sentences. The remaining sentences were imposed concurrently.
Appellant timely appealed and herein raises the following three Assignments of Error:
 "I. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS WITH REGARDS TO THE COMPUTER DISKS FOUND IN HIS HOME.
 "II. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES ON THE APPELLANT.
 "III. THERE WAS INSUFFICIENT EVIDENCE TO CLASSIFY THE APPELLANT AS A SEXUAL PREDATOR."
 I.
In his First Assignment of Error, appellant argues the trial court erred in overruling the motion to suppress the evidence found on computer disks obtained in appellant's home. We disagree.
There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysiner, supra. In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing his sole Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
It is well-established a defendant waives his or her Fourth Amendment protection by consenting to a warrantless search. State v. Barnes
(1986), 25 Ohio St.3d 203, 208, citing Davis v. United States (1946),328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453, Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, State v. Pi KappaAlpha Fraternity (1986), 23 Ohio St.3d 141, 491 N.E.2d 1129. "The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent." Barnes, supra,
citing Schneckloth, supra; United States v. Mendenhall (1980),446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. Id. at 208-209. When making this determination, the state must show by clear and convincing evidence that the consent was freely and voluntarily given. State v.Gouveia (Oct. 25, 1989), Ashland App. No. CA-925.
Appellant essentially argues that Detective Grizzard coerced appellant to consent to the search of his home, citing Bumper v. North Carolina
(1968), 391 U.S. 543, which holds that a consent following a law enforcement officer's claim of authority is not voluntarily given but merely an acquiescence and an acknowledgment of authority. Appellant directs our attention to the following portion of Grizzard's interview:
 "GRIZZARD: Now, there is one other thing that I can do, that I would like to do, hum to give us a pretty good understanding about what's going on in your life, you know, you need to tell me where the rest of these pictures are get them out of your household okay so that those negative influences are no longer in your household, okay, I'm certain that your wife doesn't want them as well. I'll tell you something else, I have a search warrant for your house, okay, now we can . . .
"LIMBACH: . . . Oh no, my wife, oh my
 "GRIZZARD: Okay now, now wait now, because we have an opportunity here where you can simply give us consent to search your home and cooperate tell us exactly, take us right into your home, show us exactly where that stuff is. Sign a consent to search, okay, show us where it's at, I mean because other wise what we will do is we are going to go into your house we're going to spend a tremendous amount of time going through all your personal effects, your drawers, you have a computer desk, you have some hidden places, I mean we could, I mean we can literally spend hours going through your garage and cars and and and your drawers and your couches and all those things and I am sure your wife will be very disappointed, she would feel very violated as through (sic) a person just came to your house and burglarized your house and went through your personal items, you would not want that to happen would ya.
"LIMBACH: No."
Appellant contends that the above exchange, especially Grizzard's indication that "I have a search warrant for your house," triggers the application of the rule in Bumper. However, as the state notes, Bumper
does not stand for the proposition that the mere mention of a search warrant vitiates any subsequent consent to a search. Rather, in addressing the issue of voluntariness, the trial court should consider the following six factors: (1) The voluntariness of the defendant's custodial status; (2) The presence of coercive police procedures; (3) The extent and level of the defendant's cooperation with the police; (4) The defendant's awareness of his right to refuse to consent; (5) The defendant's education and intelligence; and (6) The defendant's belief that no incriminating evidence will be found. State v. Hall (Dec. 14, 2000), Tuscarawas App. Nos. 2000AP030025, 2000AP030026, citing State v.Webb (Jan. 28, 2000), Montgomery App. No. 17676.
The record reveals that appellant voluntarily decided it would be best for him and his relationship with his wife to cooperate with the Massillon police, and by the time appellant gave his consent to a search of his home, he had already waived his Miranda rights and agreed to talk to Detective Grizzard. We are unpersuaded that Grizzard threatened or improperly coerced appellant, or deceived him regarding the existence of the warrant. There is further no evidence that appellant suffered any significant lack of education or intelligence as pertains to the period of custody and search. Appellant also voluntarily directed the officers to the area where he kept the computer disks upon entrance to the house.
We believe, under the totality of the circumstances, a conclusion is warranted that appellant voluntarily consented to the search of his home. Schneckloth, supra. Therefore, the trial court properly denied the motion to suppress.
Appellant's First Assignment of Error is overruled.
 II.
In his Second Assignment of Error, appellant contends the trial court erred in failing to meet statutory prerequisites for imposing consecutive sentences. We disagree.
Pursuant to R.C. 2953.08(G)(1), "[t]he court hearing an appeal of a sentence * * * may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds any of the following:
(a) That the record does not support the sentence;
"* * *"
(d) That the sentence is otherwise contrary to law."
R.C. 2929.14(E)(4) provides: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
In the case sub judice, the trial court made findings in its sentencing entry pursuant to the first paragraph of R.C. 2929.14(E)(4), as well as R.C. 2929.14(E)(4)(b). Appellant centers his argument on R.C.2929.19(B)(2)(c), which requires that a trial court state its reasons for imposing consecutive sentences, alleging that the court's reasons were inadequate in this case. However, the transcript of the sentencing hearing reveals the trial court's recognition that appellant had stored in his basement 328 computer disks with 5,354 images of child pornography, many depicting "exceptionally young" children, keeping them like one "would collect baseball cards." Tr., Sentencing Hearing, at 41. The court noted that the disks illustrated that there were effectively over 5,000 child pornography victims involved, and that appellant by keeping these images had been a willing participant in the industry. Despite appellant's protestations that he was merely "role playing" via the e-mail correspondence, the court concluded that appellant was fully prepared to sexually abuse two extremely young children, equipping himself on the day he was arrested with lubricant, napkins, and a camera. The court also concluded, based on the presentence investigation report, that appellant still did not feel he was a sex offender. Tr., Sentencing Hearing, at 41.
Upon review of the transcript of the sentencing hearing and the trial court's sentencing entry, we find that the trial court made the findings required by R.C. 2929.14(E)(4) and sufficiently stated its reasons for imposing consecutive sentences. We further find that the record supports the trial court's findings.
Appellant's Second Assignment of Error is overruled.
 III.
In his Third Assignment of Error, appellant maintains the trial court erred when it classified him a sexual predator because the finding is not supported by the evidence. We disagree.
In State v. Cook (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review both Assignments of Error together under the standard of review contained in C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. Id. at syllabus. R.C.2950.01(E) defines "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(2) sets forth the relevant factors a trial court is to consider in making its determination:
 "(2) In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following: (a) The offender's age; (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed; (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; (g) Any mental illness or mental disability of the offender; (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty; (j) Any additional behavioral characteristics that contribute to the offender's conduct."
In classifying appellant a sexual predator during the sentencing portion of the case sub judice, the trial court considered the above factors. The court indicated on the record, inter alia, that appellant was in his forties, versus the very young age of his two intended victims. The court, noting its duty to consider "all relevant factors," stated it could not overlook "the vast number" of child pornography images in appellant's possession. The court also pronounced concern over the nature of the fantasies appellant unwittingly described to Grizzard during the undercover correspondence. Tr., Sentencing Hearing, at 22. Although appellant points out the lack of psychological assessments in the record and the absence of evidence of prior sex offense convictions, based on the foregoing, we find that the trial court considered the elements set forth in R.C. 2950.09(B)(2) and that there was competent, credible evidence to support the sexual predator findings made by the trial court at the sentencing hearing. We further find that the evidence presented to the trial court at the hearing supports the finding that appellant is a sexual predator and is likely to engage in the future in one or more sexually oriented offenses. Appellant's Third Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: WISE, J. HOFFMAN, P.J., and BOGGINS, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs to appellant.