OPINION
{¶ 1} Defendant, Jesse Jackson, appeals from his conviction and sentence for rape, which was entered on his plea of no contest after the trial court overruled Defendant's motion to suppress evidence of his statements to police.
 {¶ 2} Xenia police detective Gerald Merriman testified at the suppression hearing that, on March 28, 2001, he called Defendant and asked him to come to the police station to talk about an investigation Merriman was conducting. Defendant agreed to come in, an appointment was made, and Defendant appeared at the police station the next day.
 {¶ 3} Det. Merriman testified that, after escorting Defendant from the lobby to the interview room, he told Defendant he was not under arrest, that he was free to leave at any time, that he did not have to answer any questions, and that no matter what he said during the interview, Defendant would be able to leave the police station afterward. Det. Merriman also told Defendant that the door to the interrogation room would be closed for privacy, but not locked.
 {¶ 4} Defendant was at the police station for one hour and fifty minutes, according to Det. Merriman, during which time he was questioned by Det. Merriman. Defendant voluntarily took a voice stress test, was questioned further, and finally confessed in response to the interrogation. (T. 32). After also giving a written statement, at the Detective's request, Defendant was allowed to leave. At no time was Defendant advised of his Miranda rights. Det. Merriman testified that during the interrogation preceding Defendant's confession he told Defendant that if he cooperated, probation and sexual counseling was possible because Defendant had no record of prior offenses.
 {¶ 5} Defendant also testified at the suppression hearing. His version of the events differs from Det. Merriman's. Defendant claims that he believed he had no choice but to go to the police station and talk with Det. Merriman, and that he was never told he was free to leave. Defendant testified that he did not feel free to leave, and that he believed that he had to stay and answer all of Det. Merriman's questions.
 {¶ 6} According to Defendant, Det. Merriman threatened to take the results of his voice stress test to the prosecutor and grand jury, suggesting that Det. Merriman would say that Defendant's denials were untrue. Det. Merriman then told Defendant, if he cooperated and told what happened, Det. Merriman would speak to the prosecutor and grand jury and try to get Defendant probation and sexual counseling. After being told that, Defendant confessed, and thereafter also gave a written statement. Defendant conceded that he never asked to leave the police station or to terminate the interview, and that he was at all times well treated by Det. Merriman.
 {¶ 7} Defendant was indicted on one count of rape of a person under thirteen years of age. R.C. 2907.02(A)(1)(b). Defendant filed a motion to suppress the statements he made to police. Following a hearing, the trial court overruled Defendant's motion to suppress, whereupon Defendant entered a no contest plea to the charge and was found guilty. The trial court sentenced Defendant to six years imprisonment and classified him a sexually oriented offender. Execution of Defendant's sentence was suspended pending this appeal.
 {¶ 8} Defendant has timely appealed to this court from his conviction and sentence. Defendant presents two assignments of error, both of which challenge the trial court's decision overruling his motion to suppress.
 APPELLANT'S FIRST ASSIGNMENT OF ERROR {¶ 9} "THE TRIAL COURT ERRED IN NOT SUPPRESSING THE STATEMENTS BY APPELLANT WHICH WERE OBTAINED IN VIOLATION OF HIS MIRANDA RIGHTS."
 {¶ 10} Defendant argues that the trial court erred in not suppressing his statements to police because he was not advised of hisMiranda rights prior to being questioned at the police station.
 {¶ 11} Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, requires police officers to give a suspect certain prescribed warnings before subjecting the suspect to "custodial interrogation." Otherwise, any statements elicited during that interrogation must be suppressed. The critical question in most situations, and in this case, is whether the suspect was in custody when the interrogation took place. Miranda
warnings are not required merely because questioning takes place at the police station. State v. Barnes (1986), 25 Ohio St.3d 203, 207.
 {¶ 12} Whether a station house interrogation is custodial depends on whether there is a formal arrest or restraint on freedom of movement to a degree associated with a formal arrest. California v. Beheler
(1983), 463 U.S. 1121, 103 S.Ct. 3517. The question is determined by an objective test; whether a reasonable person would believe, based upon all of the circumstances, that he or she was under arrest or its functional equivalent. Stansbury v. California (1994), 511 U.S. 318,114 S.Ct. 1526. The subjective views of the officer and the suspect are not controlling. State v. Petitjean (2000), 140 Ohio App.3d 517, 523.
 {¶ 13} It is clear from the trial court's findings on this issue that it chose to believe Det. Merriman, rather than Defendant. In a motion to suppress, the trial court assumes the role of the trier of facts and determines the credibility of the witnesses and the weight to be given to their testimony. State v. White (1996), 110 Ohio App.3d 347. A court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v.Satterwhite (1997), 123 Ohio App.3d 322. The court of appeals must then independently determine as a matter of law whether those facts meet the appropriate legal standard, without deference to the trial court's conclusion. Id.
 {¶ 14} In its decision overruling Defendant's motion to suppress, the trial court found that Defendant voluntarily came to the police station in response to Det. Merriman's request, that Defendant was informed that he was not under arrest nor would he be arrested that day, and that he was free to leave at anytime. There is competent, credible evidence in this record to support those findings. Accepting those facts as true, we conclude that a reasonable person in Defendant's position would not believe he was under arrest. Oregon v. Mathiason (1977),429 U.S. 492, 97 S.Ct. 711; California v. Beheler, supra; Stansbury v.California, supra; State v. Barnes, supra; State v. Petitjean, supra. Because Defendant was not in custody when he was interrogated by Det. Merriman, Miranda warnings were not required.
 {¶ 15} The first assignment of error is overruled.
 APPELLANT'S SECOND ASSIGNMENT OF ERROR {¶ 16} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT'S INVOLUNTARY STATEMENTS WHICH WERE A RESULT OF IMPERMISSIBLE POLICE TACTICS."
 {¶ 17} Defendant argues that the trial court erred in not suppressing his statements to police because his confession was involuntary, even if the interrogation that produced it did not requireMiranda warnings. Defendant claims that his confession was rendered involuntary by false promises of leniency made by police that induced him to confess.
 {¶ 18} Claims such as this present a very difficult question for the courts: whether a defendant who has confessed that he committed a crime should nevertheless be entitled to have that confession excluded from use in his subsequent prosecution because the confession was involuntary. State v. Petitjean, supra.
 {¶ 19} The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee that no person in any criminal case shall be compelled to be a witness against himself. The concern that animated the framers to adopt the Fifth Amendment was that coerced confessions are inherently untrustworthy. Dickerson v.United States (2000), 530 U.S. 428, 120 S.Ct. 2326. "A free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt . . . but a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape . . . that no credit ought to be given it." Id. at 433.
 {¶ 20} A suspect may waive his constitutional right against self-incrimination, provided that waiver is voluntary. A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515; Statev. Otte, 74 Ohio St.3d 555, 1996-Ohio-108.
 {¶ 21} The issues of whether a confession is voluntary, and whether a suspect has been subjected to custodial interrogation so as to require Miranda warnings, are analytically separate issues. Dickerson,supra; State v. Chase (1978), 55 Ohio St.2d 237. The due process clause continues to require an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession. Dickerson, at 434. This due process test takes into consideration the totality of all the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation. Id. Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements. State v. Edwards (1976), 49 Ohio St.2d 31.
 {¶ 22} Even when Miranda warnings are not required, a confession may be involuntary and subject to exclusion if on the totality of the circumstances the defendant's will was overborne by the circumstances surrounding the giving of that confession. Dickerson, supra, at 434. If all of the attendant circumstances indicate that the confession was coerced or compelled, it cannot be used to convict the defendant. That determination depends upon a weighing of the pressure to confess against the power of resistance of the person confessing. Id.
 {¶ 23} In support of his claim that his confession was involuntary because police improperly induced his confession by false promises of leniency regarding the possibility of probation, Defendant relies uponState v. Arrington (1984), 14 Ohio App.3d 111.
 {¶ 24} In Arrington, officers told an accused, who was one of two co-defendants indicted for aggravated murder, that "if you weren't the one who pulled the trigger * * * it can be probational." Concerning the possibility of additional charges, they told him: "You can talk to us * * * you don't have to worry about no (sic) additional charges." The trial court suppressed the statements as involuntary. The court of appeals agreed, holding:
 {¶ 25} "Where an accused's decision to speak was motivated by police officers' statements constituting `direct or indirect promises' of leniency or benefit and other representations regarding the possibility of probation which were misstatements of the law, his incriminating statements, not being freely self-determined, were improperly induced, involuntary and inadmissible as a matter of law." Id. at syllabus.
 {¶ 26} This court confronted the same issue in State v. Hopfer
(1996), 112 Ohio App.3d 521, 679 N.E.2d 321, which involved the prosecution of a juvenile for murdering her newborn baby. She claimed that an officer who questioned her had said that she would get probation if she made a statement, but would receive "no mercy" unless she added incriminating language. The trial court did not believe Hopfer, and we deferred to its finding of fact. In discussing the legal issue, however, we cited Arrington and stated: "Promises of leniency by the police, such as probation upon conviction, are improper and render an ensuing confession involuntary. * * * However, `admonitions to tell the truth directed at a suspect by police officers are not coercive in nature.'"Id. at 547-548, 679 N.E.2d at 338, citing State v. Wiles (1991),59 Ohio St.3d 71, 571 N.E.2d 97, and State v. Cooey (1989),46 Ohio St.3d 20, 544 N.E.2d 895.
 {¶ 27} Arrington relied on a California case, People v. Flores
(1983), 144 Cal.App.3d 459, 192 Cal.Rptr. 772, which makes an important distinction concerning promises made by police that induce a suspect's incriminating statement. The Flores court stated:
 {¶ 28} "The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. * * *
 {¶ 29} "When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear. (Emphasis added.)" (Quoting People v. Hill [1967],66 Cal.2d 536, 549, 58 Cal.Rptr. 340 [348], 426 P.2d 908 [916].)Arrington, supra, at 115, 470 N.E.2d at 216.
 {¶ 30} The Flores distinction corresponds to the policy underlying the Fifth Amendment prohibition against the use of coerced confessions that the United States Supreme Court reiterated in Dickerson, supra. When a confession is forced from the mind by the flattery of hope or by the torture of fear, it is unreliable and no credit ought to be given to it. Promises or suggestions of leniency in exchange for waiving theFifth Amendment privilege create a flattery of hope, which is made even more powerful by the torture of fear that accompanying threats of punishment induce in the mind of the accused. Petitjean, supra.
 {¶ 31} Defendant places substantial reliance on this court's decision in Petitjean. In that case, police officers questioning Petitjean concerning a homicide, told him he was facing a murder charge, and that if they had to gather evidence through investigation to use against him, "you go bye bye for life, or lose your life." Alternatively, they told him "if you want to work with us and work with yourself, god damn you'd probably get two years of probation." Those statements followed the officer's strong encouragement to Petitjean to "get it out" if he had to defend himself against attack by the deceased victim.
 {¶ 32} We held that Petitjean's ensuing confession was involuntary. The officers' statement specifically conditioned the availability of probation on Petitjean's waiver of his Fifth Amendment right. The probation alternative the officers presented to Petitjean was so remote from reality as to be illusory, and was a misstatement of the law because probation was unavailable for the offense of which he was accused and convicted. Judged against the alternative the officers gave Petitjean, the prospect of the death penalty or life imprisonment should he remain silent, that false hope created by their suggestion of a more lenient punishment critically impaired Petitjean's capacity for self-determination because it totally undermined his capacity for rational calculation. Because of that, his will was overborne, and his resulting decision to waive his Fifth Amendment right was involuntary.Petitjean, supra, at 533.
 {¶ 33} In rejecting Defendant Jackson's claim that his confession was involuntary, the trial court found there is no evidence that Defendant was threatened and no evidence of physical deprivation or mistreatment. There is competent, credible evidence in the record to support those findings, and thus this court will not disturb them.
 {¶ 34} The trial court also found that no impropriety is demonstrated by Det. Merriman's interrogation of Defendant, and that given the totality of the circumstances Defendant's statements were voluntary. These are not questions of fact but rather questions of law. So too is the question of whether there is sufficient evidence to support the trial court's findings. Petitjean, supra. That requires an independent review by this court, without deference to the trial court's conclusions. Id.
 {¶ 35} Det. Merriman's testimony at the suppression hearing demonstrates that Defendant was a twenty-five year old high school graduate who had no prior experience with the police. When Det. Merriman first asked Defendant if he had committed this offense, the rape of a child, Defendant denied it. Det. Merriman indicated to Defendant that he did not believe him, and asked Defendant to take a voice stress test, which Defendant did.
 {¶ 36} After the test, Det. Merriman confronted Defendant with the test results, which in Merriman's opinion showed that Defendant had failed. Det. Merriman repeated the accusation made against Defendant, but Defendant again denied any wrongdoing. (T. 29). Det. Merriman stated that he didn't believe Defendant. (T. 19, 29).
 {¶ 37} Det. Merriman next told Defendant that he was confronted with a serious offense, (T. 30), and asked Defendant what the judge or jury would conclude were Merriman to testify, presumably about the voice stress test results. (T. 30-31). Det. Merriman told Defendant that Defendant's cooperation would be taken into consideration. (T. 30). Merriman also told Defendant that, should he cooperate, probation and sexual counseling were possible because Defendant had no prior record. (T. 30). Det. Merriman testified that Defendant then made a statement in response to his questions, and thereafter reduced it to writing at Det. Merriman's request. (T. 32-33). What the testimony given by Defendant at the suppression hearing, if believed, adds to this scenario is that Defendant knew beforehand what Det. Merriman wanted to talk to him about. Defendant state that he was very nervous and didn't know what to do. After Det. Merriman confronted Defendant with the results of the voice stress test and Defendant continued to deny any wrongdoing, Det. Merriman threatened to take the results of that test to the prosecutor and grand jury. Det. Merriman told Defendant that if he admitted wrongdoing and told what had happened, Merriman would go to the prosecutor and grand jury and try to get Defendant probation and sexual counseling. If not, Merriman would say Defendant was lying and he would do a "stretch of time." Merriman asked Defendant which of them he thought would be believed, him or Defendant. Right after that, Defendant wrote out his confession.
 {¶ 38} Even accepting as true Det. Merriman's version of the events instead of Defendant's, it is nevertheless clear that Det. Merriman's suggestion of leniency, the possibility of probation and counseling, was expressly conditioned upon Defendant's waiver of hisFifth Amendment privilege. Petitjean, supra. The benefit suggested was not merely that which flows naturally from a truthful and honest course of conduct. Rather, Defendant was given to understand that he might benefit from lenient treatment from police, the prosecutor, and the courts, in the form of probation in exchange for his statement. Flores,supra. Defendant's oral and written confessions contradicting his prior denials of culpability were given in exchange for, and presumably in reliance on, those statements.
 {¶ 39} This suggestion of leniency was false, misleading, and a misstatement of the law. The offense of which Defendant was accused and for which he was subsequently indicted and convicted, rape of a child, is not probationable, and it requires a mandatory period of incarceration of three to ten years. R.C. 2929.13(F)(2); R.C. 2929.14(A). There was, therefore, no possibility at all that Defendant could receive the lenient treatment that Det. Merriman told him was available in exchange for his cooperation. The mere fact that this false promise of leniency was itself expressed in terms of "possibilities" and was contingent on the cooperation of the prosecutor, the grand jury, and, ultimately, the court, does not save the misrepresentation from rendering Defendant's confession involuntary, because the benefit offered was impossible to achieve. Petitjean, at 533; Flores.
 {¶ 40} In discussing the impermissible police conduct at issue inPetitjean, we stated: "The rationale of Arrington, which this court expressly adopted in Hopfer, is that false promises made by police to a criminal suspect that he can obtain lenient treatment in exchange for waiving his Fifth Amendment privilege so undermines the suspect's capacity for self-determination that his election to waive the right and incriminate himself in criminal conduct is fatally impaired. His resulting waiver and statement are thus involuntary for Fifth Amendment purposes. * * * The simple result is that officers must avoid such promises, which are not proper tools of investigation." Id., at 534. Regrettably, that same police misconduct is present in this case, and it compels the same result.
 {¶ 41} "The `often competitive enterprise of ferreting out crime' to which Justice Jackson referred in Johnson v. United States (1948),333 U.S. 10, 14, 68 S.Ct. 367, 369, has not lessened with the passage of time. If anything, that competition has grown even more furious. To the extent that has increased the pressure on police officers to produce results, they often respond by employing more aggressive investigative techniques. However, the more aggressive police become in questioning suspects, the greater the risk that a resulting confession is involuntary. Then, it is the sworn duty of the courts to prevent the use of the confession, and any evidence derived from it, in the Defendant's subsequent prosecution. Petitjean, supra, at 534."
 {¶ 42} The second assignment of error is sustained.
 Conclusion {¶ 43} Having sustained Defendant's second assignment of error, we will reverse his conviction and remand the case for further proceedings consistent with this opinion. The oral and written statements Defendant made to police during his interrogation on March 29, 2001, are ordered suppressed from use by the State in any subsequent proceeding, as is any other evidence derived from those statements. Of course, any evidence obtained by police independent of Defendant's statement he made to police may be used to prove Defendant's guilt.
WOLFF, P.J. and BROGAN, J., concur.